UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HERMAN BELL,

                              Plaintiff,                        9:20-cv-00256 (BKS/TWD)

v.

New York State Corrections Officer ("C.O.") JEREMY SAUNDERS, C.O. CHRISTOPHER WINCHELL, C.O. ANTHONY WETHERBY, C.O. PATRICK BROCKWAY, and C.O. JUSTIN QUAIN, in their individual capacities,

                              Defendants.
_____

**Appearances:**

*For Plaintiff:*
David B. Rankin
Regina Powers
Beldock, Levine & Hoffman LLP
99 Park Avenue PH/26th Floor
New York, NY 10016

*For Defendant Christopher Winchell:*
Lawrence Elmen
Elmen Law Firm P.C.
24 Pine Street, Suite 4
Glens Falls, NY 12801

**Hon. Brenda K. Sannes, United States District Judge:**

MEMORANDUM-DECISION AND ORDER

I.      INTRODUCTION

      Plaintiff Herman Bell brings this action under 42 U.S.C. § 1983, alleging that during his incarceration at Great Meadow[1] Correctional Facility ("Great Meadow"), Defendant Corrections

---

[1] Although Plaintiff refers to "Great Meadows Correctional Facility" in his Amended Complaint, the parties refer to "Great Meadow Correctional Facility" in their briefing, which appears to be the correct name of the facility.

Officers ("C.O.'s") Jeremy Saunders, Christopher Winchell,[2] Anthony Wetherby, Patrick Brockway, and Justin Quain subjected him to excessive force and/or failed to intervene to prevent this use of force in violation of the Eighth and Fourteenth Amendments. (Dkt. No. 56). Plaintiff further alleges that Defendants violated his Fourteenth Amendment right to procedural due process when they initiated a disciplinary proceeding against him based on false reports, leading to his placement in a "Segregated Housing Unit" ("SHU") where he was subjected to restrictive conditions of confinement. (*Id.*). Presently before the Court is Defendant Christopher Winchell's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the applicable statute of limitations bars Plaintiff's claims against him, and that Plaintiff's due process claim must be dismissed for failure to plead a protected liberty interest. (Dkt. No. 69). Plaintiff opposed the motion, (Dkt. No. 76), and Defendant Christopher Winchell replied, (Dkt. No. 77). For the reasons discussed below, the motion to dismiss is granted in part.

## II.   FACTS[3]

On September 5, 2017, Plaintiff was incarcerated at Great Meadow in Westchester County, New York. (Dkt. No. 56, ¶ 6). That day, at around 10:00 a.m., Defendant C.O.'s Saunders, Christopher Winchell, Wetherby, and Brockway "assaulted" Plaintiff "without provocation" around the steps to the mess hall foyer. (*Id.* ¶ 8). Defendant C.O. Quain failed to intervene to stop the assault despite having "the opportunity to" do so. (*Id.* ¶ 9). As a result of this incident, Plaintiff "suffered a concussion, a serious knee injury, eye damage, multiple broken

---

[2] As discussed below, although Plaintiff originally named *Charles* Winchell as a defendant, (Dkt. No. 1), in his Amended Complaint, he substituted *Christopher* Winchell as a defendant, (Dkt. No. 56).

[3] The facts are drawn from Plaintiff's Amended Complaint. (Dkt. No. 56). The Court assumes that all well-pleaded facts are true and draws all reasonable inferences in Plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

ribs, bruising, and emotional distress" and he was "denied adequate medical care in response to his injuries." (*Id.* ¶¶ 12–13).

Defendants "issued false reports" and "fabricated evidence against [Plaintiff] in that they initiated a disciplinary proceeding through the use of false documents and statement[s]" causing Plaintiff to be placed in solitary confinement or SHU "without cause" for approximately 30 days. (*Id.* ¶¶ 10, 20–21). When Plaintiff was in SHU, he was confined to his cell for 23 hours per day. (*Id.* ¶ 11). The back portion of his cell "opened electronically for one hour of recreation," and it was up to him whether to go outside at that time. (*Id.*). It was "possible to get direct sunlight from the screened in space depending on [the] time of day." (*Id.*). There were no windows, he had a "non-reflective mirror," and the cell provided Plaintiff "limited privacy." (*Id.*). Plaintiff's phone use was restricted, he could only have one visitor each week, he was "not allowed any items of personal clothing" and he "could only have" paper and a pencil. (*Id.*).

### III.   PROCEDURAL HISTORY[4]

Plaintiff filed his original complaint on March 6, 2020, naming Charles Winchell as a defendant. (Dkt. No. 1). In a letter dated April 27, 2020, Plaintiff requested a 45-day extension of time to serve the defendants in light of "the severity of the COVID-19 situation." (Dkt. No. 4). The Court granted Plaintiff's request, extending the time for service until June 19, 2020. (Dkt. No. 5). Plaintiff served all Defendants, including Charles Winchell, by June 20, 2020. (Dkt. Nos. 8, 11–14).

On September 9, 2020, Assistant Attorney General Mark G. Mitchell entered an appearance on behalf of Defendant Charles Winchell, (Dkt. No. 19), and filed a motion to

---

[4] The Court assumes the parties' familiarity with the procedural history as set out in the Court's decision on Plaintiff's motion to amend. (Dkt. No. 55).

3

dismiss for failure to state a claim on his behalf, (Dkt. No. 18). In the motion, Defendant Charles Winchell argued, inter alia, that Plaintiff's claims against him should be dismissed for lack of personal involvement, (Dkt. No. 18-2, at 4–5), attaching a declaration in which he attested that he worked "exclusively at Eastern NY Correctional Facility in Ulster County," and that he had "never been to Great Meadow Correctional Facility," (Dkt. No. 18-1).

On September 17, 2020, United States Magistrate Judge Thérèse Wiley Dancks held a telephone conference, during which the parties discussed "whether the correct 'Winchell' is a party to this case." (Text Minute Entry Sept. 17, 2020). In a September 18, 2020 Text Order following the conference, Magistrate Judge Dancks directed the parties confer on this issue. (Dkt. No. 23). According to Plaintiff, "Charles Winchell's counsel did not provide the correct individual, or any individual, with the last name of Winchell." (Dkt. No. 30-1, ¶ 5). Plaintiff, however, "subsequently identified Christopher Winchell as the party that should properly be added." (*Id.* ¶ 7).

On October 28, 2020, Plaintiff filed a cross-motion to amend the Complaint, attaching a Proposed Amended Complaint substituting Christopher Winchell for Charles Winchell. (Dkt. Nos. 30, 30-2). Defendant Charles Winchell responded in opposition, arguing that while all claims against him should be dismissed for lack of personal involvement, Plaintiff's amendments would be futile, as Plaintiff's claims against Christopher Winchell would be time-barred, and that Plaintiff's due process claim must be dismissed as he had not alleged a protected liberty interest. (Dkt. No. 35; Dkt. No. 35-1, at 5, 10). Plaintiff replied, arguing that his claims against Christopher Winchell were timely because New York's statute of limitations was tolled from March 20, 2020 through November 3, 2020 by Executive Order No. 202.8 and subsequent orders

4

issued by New York State Governor Andrew Cuomo, and that his claims against Christopher Winchell relate back to his original complaint under Fed. R. Civ. P. 15(c)(1)(C). (Dkt. No. 40).

On April 29, 2021, this Court granted Plaintiff's motion to amend, directing Plaintiff to file his Amended Complaint by May 12, 2021, and denying Defendant's motion to dismiss as moot. (Dkt. No. 55). The Court did not reach the tolling or relation-back issues, noting that the parties agreed that Charles Winchell was not a proper defendant and should be dismissed, that these issues had not yet been fully addressed by the parties in interest, and that these issues would be addressed if raised by the parties in interest in a future motion. (*Id.* at 7–8).

Plaintiff filed his Amended Complaint on May 12, 2021, substituting Christopher Winchell for Charles Winchell. (Dkt. No. 56).

## IV.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

V.   DISCUSSION

  A.   **Statute of Limitations**

Defendant Christopher Winchell first argues that Plaintiff's claims against him are barred by the statute of limitations, because Plaintiff did not file his Amended Complaint, naming Christopher Winchell as a defendant, until May 12, 2021. (Dkt. No. 69-3, at 7–20).

The parties agree that Plaintiff's cause of action for excessive force and failure to intervene accrued on September 5, 2017, when he was allegedly assaulted. (Dkt. No. 69-3, at 7–8); *see also Fairley v. Collins*, No. 09-cv-6894, 2011 WL 1002422, at *3, 2011 U.S. Dist. LEXIS 26536, at *10 (S.D.N.Y. Mar. 15, 2011) (noting that "an excessive force claim accrues when the use of force occurred") (quotations omitted). The parties also agree that Plaintiff's § 1983 claims are subject to a three-year statute of limitations period. (Dkt. No. 69-3, at 7 (first citing N.Y. C.P.L.R. § 214(5), and then citing *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) ("In section 1983 actions, the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions.'")); Dkt. No. 76, at 8 (citing *Pearl*, 296 F.3d at 79)).[5]

Plaintiff did not file his Amended Complaint, (Dkt. No. 56), naming Christopher Winchell as a defendant, until May 12, 2021, more than three years after his claim accrued on

---

[5] As to Plaintiff's second cause of action for violation of his procedural due process rights, Plaintiff does not allege when the disciplinary proceedings resulting in his SHU confinement occurred. "[T]he statute of limitations begins to run from the date that the plaintiff was denied the full and fair hearing he was entitled to." *Povoski v. Lacy*, No. 14-cv-97, 2017 WL 9511094, at *8, 2017 U.S. Dist. LEXIS 205851, at *20–21 (N.D.N.Y. Dec. 13, 2017) (quotations omitted), *report and recommendation adopted*, 2018 WL 547392, 2018 U.S. Dist. LEXIS 7016 (N.D.N.Y. Jan. 17, 2018). Therefore, because the accrual date of Plaintiff's due process claim is not clear from his Amended Complaint, dismissal of the claim on statute of limitations grounds would be improper at this stage. *Ceara v. Deacon*, 68 F. Supp. 3d 402, 406 (S.D.N.Y. 2014) ("Although '[t]he lapse of a limitations period is an affirmative defense that a defendant must plead and prove[,]' a statute of limitations defense may be 'raise[d] . . . in a Rule 12(b)(6) motion *if the defense appears on the face of the complaint*.'") (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)) (emphasis added); *see also Gonzalez v. City of New York*, No. 18-cv-02197, 2018 WL 10323053, at *6, 2018 U.S. Dist. LEXIS 213958, at *15–16 (S.D.N.Y. Dec. 17, 2018) (denying motion to dismiss due process claims on timeliness grounds when it was not sufficiently clear from the face of the complaint when the termination forming the basis of these claims occurred).

September 5, 2017. However, Plaintiff argues that his claims against Christopher Winchell are not barred by the statute of limitations because: (1) Executive Orders tolled the statute of limitations for 228 days, and he timely filed his motion to amend (attaching a proposed amended complaint naming Christopher Winchell as a defendant) on October 28, 2020, and (2) Defendant had constructive notice of Plaintiff's claims against Christopher Winchell through counsel, such that those claims relate back to the filing of the original complaint. (Dkt. No. 76, at 8–17).

On March 7, 2020, New York State Governor Andrew Cuomo issued Executive Order 202, declaring a disaster emergency for the State of New York due to the COVID-19 pandemic. 9 N.Y.C.R.R. § 8.202. On March 20, 2020, Governor Cuomo signed Executive Order 202.8, limiting court operations to "essential matters" and declaring that "any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding as prescribed by the procedural laws of the state . . . is hereby tolled from the date of this executive order until April 19, 2020." *Id.* § 8.202.8. The Governor issued nine subsequent Executive Orders, collectively extending the first order until November 3, 2020. *See id.* §§ 8.202.14, 8.202.28, 8.202.38, 8.202.48, 8.202.55, 8.202.55.1, 8.202.60, 8.202.63, 8.202.67. Executive Order 202.72 provided that the tolling of time limits established by Executive Order 202.8 would no longer be in effect as of November 4, 2020. *Id.* § 8.202.72.

Although Defendant "concedes that New York State Executive Order 202.8 . . . tolled the statute of limitations . . . from March 20, 2020 through April 19, 2020," he "does challenge the scope and breath of such action upon Federal statutes, rules and regulations." (Dkt. No. 69-3, at 11). However, "[t]he Supreme Court has instructed that in section 1983 actions, we borrow not only a state's limitations period but also its 'tolling rules,' . . . unless applying the state's tolling rules 'would defeat the goals of the federal statute at issue.'" *Pearl*, 296 F.3d at 80 (citing, inter

7

alia, *Board of Regents v. Tomanio*, 446 U.S. 478, 484–86 (1980)); *see also Barnes v. Uzu*, No. 20-cv-5885, 2022 WL 784036, at *10, 2022 U.S. Dist. LEXIS 46014, at *27–28 (S.D.N.Y. Mar. 15, 2022) ("Because the statute of limitations for § 1983 actions is driven by state law, any statute or executive order that tolls the underlying statute of limitations on state personal injury claims has the effect of tolling the statute of limitations for commensurate § 1983 action.") (citations omitted). Indeed, courts "have uniformly concluded that Executive Order 202.8 applies to federal cases applying New York's statute of limitations, including for § 1983 claims." *Rich v. State of New York*, No. 21-cv-3835, 2022 WL 992885, at *8, 2022 U.S. Dist. LEXIS 60779, at *20 (S.D.N.Y. Mar. 31, 2022); *see, e.g.*, *McDonald v. City of New York*, No. 20-cv-4614, 2022 WL 1469395, at *4, 2022 U.S. Dist. LEXIS 84310, at *9 (E.D.N.Y. May 10, 2022) (applying the tolling rules of Executive Order 202.8 and subsequent orders to § 1983 claims); *Paul v. Capra*, No. 20-cv-5154, 2022 WL 992845, at *6, 2022 U.S. Dist. LEXIS 60689, at *16 (S.D.N.Y. Mar. 31, 2022) (same); *Cain v. County of Niagara, N.Y.*, No. 20-cv-1710S, 2022 WL 616795, at *5, 2022 U.S. Dist. LEXIS 38140, at *12 (W.D.N.Y. Mar. 2, 2022) (same).

Defendant also disputes the "validity or effect of all subsequent executive orders," asserting that "no Federal district court has addressed whether the New York State Executive Orders which followed Order 202.8 served to 'suspend' or to 'toll' the procedural laws of the State of New York, as each term is applied in different Executive Orders." (Dkt. No. 69-3, at 11–12). "A toll suspends the running of the applicable period of limitation for a finite time period, and '[t]he period of the toll is excluded from the calculation of the [relevant time period].'" *Brash v. Richards*, 149 N.Y.S.3d 560, 561 (N.Y. App. Div. 2021) (citing *Chavez v. Occidental Chem. Corp.*, 35 N.Y.3d 492, 505 n.8 (N.Y. 2020)) (alterations in original). A suspension, on the other hand "does not exclude its effective duration from the calculation of the relevant time

8

period. Rather, it simply delays expiration of the time period until the end date of the suspension." *Id.* (citing *Foy v. State of New York*, 144 N.Y.S.3d 285 (Ct. Cl. 2021)).

Executive Order 202.8 states that the "time limit for the commencement, filing, or service of any legal action . . . is hereby *tolled* from the date of this executive order until April 19, 2020." 9 N.Y.C.R.R. § 8.202.8 (emphasis added). Most of the subsequent Executive Orders do not use the word "toll," but rather state (in the same or substantially similar terms) that they "continue the *suspensions* and modifications of law" established by, inter alia, Order 202.8, *see id.* §§ 8.202.14, 202.28, 202.38, 202.48, 202.55, 202.55.1, 202.60, 202.67 (emphasis added). However, two subsequent orders specifically reference the "toll" created by Order 202.8, *see id.* §§ 202.67, 202.72. Thus, the New York State Supreme Court, Appellate Division, Second Department held in *Brash* that because Order 202.8 "expressly and plainly provided that the subject time limits were 'hereby tolled,'" and subsequent orders refer to this modification of time limits as a "toll," the subsequent executive orders "continued the toll that was put in place by Executive Order [202.8]." 149 N.Y.S.3d at 563.

This Court is "bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." *V.S. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010) (citation omitted). Executive Order 202.8 used the word "toll" in its operative language, and the Court does not find any persuasive evidence that the Court of Appeals would reach a different conclusion. District courts in this Circuit have agreed and found that Executive Order 202.8 and subsequent orders tolled the statute of limitations period from March 20, 2020 through November 3, 2020, a total of 228 days. *See, e.g.*, *Powell v. United States*, 19-cv-11351, 2022 WL 1645545, at *2, 2022 U.S. Dist. LEXIS 93314, at *7–8 (S.D.N.Y. May 24, 2022); *McDonald*, 2022 WL 1469395, at *4, 2022

U.S. Dist. LEXIS 84310, at *9; *Freud v. N.Y.C. Dep't of Educ.*, No. 21-cv-2281, 2022 WL 889213, at *5, 2022 U.S. Dist. LEXIS 54353, at *14–15 (S.D.N.Y. Mar. 25, 2022); *Paul*, 2022 WL 992845, at *6, 2022 U.S. Dist. LEXIS 60689, at *16–17. The Court thus finds that the statute of limitations period for Plaintiff's § 1983 claims was tolled for 228 days, and the period expired on April 21, 2021.[6]

Although Plaintiff did not file the Amended Complaint until May 12, 2021, he filed his motion to amend, attaching a proposed amended complaint naming Christopher Winchell, on October 28, 2020. (Dkt. No. 30). Defendant asserts that filing a motion to amend does not satisfy the statute of limitations. (Dkt. No. 77, at 6–7 (citing N.D.N.Y. L.R. 15.1(c), which notes that the granting of a motion to amend "does not constitute the filing of the amended pleading")). However, "[w]hen a plaintiff seeks to add a new defendant in an existing action, the date of the filing of the motion to amend constitutes the date the action was commenced for statute of limitations purposes." *Rothman v. Gregor*, 220 F.3d 81, 96 (2d Cir. 2000) (quoting *Nw. Nat'l Ins. Co. v. Alberts*, 769 F. Supp. 498, 510 (S.D.N.Y. 1991)); *see also Brown v. City of New York*, No. 13-cv-06912, 2017 WL 1390678, at *6, 2017 U.S. Dist. LEXIS 58283, at *17 (S.D.N.Y. Apr. 17, 2017) (finding that when the plaintiff filed a motion to amend adding new defendants within the limitations period, his claims against those new defendants were timely, and the fact that the amended complaint was not actually filed until after the limitations period ran was "irrelevant"). Therefore, because Plaintiff filed his motion to amend (attaching a proposed

---

[6] Defendant asserts that the statute of limitations expired on September 4, 2020 at 11:59 p.m. (Dkt. No. 69-3, at 10 n.3). However, when calculating the statute of limitations for § 1983 actions, courts use the three-year anniversary of the accrual date. *See, e.g.*, *Mickens v. United States*, 148 F.3d 145, 148 (2d Cir. 1998) (citing Fed. R. Civ. P. 6(a)) ("[W]hen a statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the start of the limitations period."); *Ceara*, 68 F. Supp. 3d at 406 (finding that when a § 1983 claims accrued on September 5, 2010, the statute of limitations expired on September 5, 2013). Therefore, the statute of limitations, as tolled by Executive Orders, expired three years plus 228 days after the accrual date of September 5, 2017, which is April 21, 2021.

10

amended complaint naming Christopher Winchell as a defendant) before the statute of limitations period, as tolled by the Executive Orders, expired, Defendant's motion to dismiss Plaintiff's claims on statute of limitations grounds is denied.[7]

### B.   Due Process

Defendant next argues that Plaintiff's due process claim against him should be dismissed for "failure to plead a liberty interest protected by the Fourteenth Amendment," arguing that Plaintiff's allegations, regarding having been in SHU "for approximately 30 days" are "typically associated with placement in [SHU]." (Dkt. No. 69-3, at 20–22). Plaintiff responds that Defendant's motion is premature, and the Court can only "properly assess" whether the conditions of his confinement in SHU were atypical after "development of the record." (Dkt. No. 76, at 17–23). He also responds that he has plausibly alleged that his "conditions of confinement were an atypical and significant hardship," specifically pointing to the alleged denial of medical care. (*Id.* at 21–23).

To state a claim under § 1983 for the denial of procedural due process, a plaintiff must allege both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)). "[A] prisoner's restricted confinement within a prison does not give rise to a liberty interest, warranting procedural due process protection, unless the conditions and duration of the prisoner's confinement 'impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Sealey v. Giltner*, 197 F.3d 578, 583 (2d Cir. 1999) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (alteration in original). Confinement to

---

[7] In light of this holding, the Court need not address Plaintiff's relation-back argument.

11

segregated housing may trigger procedural due process protections, depending on the length, frequency, and conditions of the confinement. *See Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000) (noting that the "duration and the frequency of such deprivations are highly relevant to whether the conditions of a plaintiff's confinement should be considered atypical" (citations omitted)).

Although the Second Circuit has "explicitly avoided" creating "a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights," the Court has established guidelines. *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004). Where the plaintiff is confined for "an intermediate duration–between 101 and 305 days–'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required.'" *Id.* (quoting *Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000)). While confinements for less than 101 days "under normal SHU conditions may not implicate a prisoner's liberty interest," such confinements "could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions of *Sealy* or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Id.*; *see Davis v. Barrett*, 576 F.3d 129,133 (2d Cir. 2009).

District courts in this Circuit routinely hold that confinement in SHU for 30 days, under ordinary SHU conditions, does not implicate a liberty interest protected by the Due Process clause, even in the absence of detailed factual development. *See, e.g.*, *Martin v. Oey*, No. 16-cv-00717, 2017 WL 9511174, at *6, 2017 U.S. Dist. LEXIS 113247, at *16 (N.D.N.Y. July 19, 2017) ("Courts have consistently held that SHU or keeplock confinement under ordinary conditions for 30 days does not rise to a level sufficient to establish a due process claim.") (collecting cases), *report and recommendation adopted* 2017 WL 4174798, 2017 U.S. Dist. LEXIS 153106 (N.D.N.Y. Sept. 20, 2017); *Brown v. Secore*, No. 08-cv-085, 2010 WL 980233,

12

at *5, 2010 U.S. Dist. LEXIS 23827, at *16 (N.D.N.Y. Feb. 12, 2010) ("The federal district courts in New York, applying *Sandin,* have been consistent in holding that terms of SHU or 'keeplock' of approximately 30 days, and the related loss of privileges, do not implicate a liberty interest protected by the Due Process clause, even in the absence of detailed factual development regarding the conditions of confinement.") (collecting cases), *report and recommendation adopted* 2010 WL 980233, 2010 U.S. Dist. LEXIS 23823 (N.D.N.Y. Mar. 15, 2010); *Washington v. Fitzpatrick*, No. 20-cv-911, 2021 WL 966085, at *9, 2021 U.S. Dist. LEXIS 48313, at *24–25 (S.D.N.Y. Mar. 15, 2021) (finding allegations of thirty days in keeplock confinement under ordinary conditions did "not plausibly plead a liberty interest").

The conditions Plaintiff describes—confinement for 23 hours per day, one hour of recreation, no windows, limited privacy, access to paper and a pencil, restricted phone use, one visitor per week, and no items of personal clothing—are not atypical for SHU confinement. *See Colon*, 215 F.3d at 230 (finding that SHU conditions including visits which were less frequent and shorter than that of the general population and limited access to books were "normal conditions of SHU confinement in New York"); *Smith v. Costello*, No. 15-cv-0401, 2017 WL 1155811, at *6, 2017 U.S. Dist. LEXIS 31341, at *18–19 (N.D.N.Y. Mar. 3, 2017) (finding that conditions including confinement for 23 hours per day and deprivation of personal property did not implicate a liberty interest), *report and recommendation adopted* 2017 WL 1155813, 2017 U.S. Dist. LEXIS 43866 (N.D.N.Y. Mar. 27, 2017); *Thomas v. DeCastro*, No. 14-cv-6409, 2018 WL 1322207, at *6, 2018 U.S. Dist. LEXIS 41121, at *20 (S.D.N.Y. Mar. 13, 2018) ("While the Second Circuit has declined to 'delineate the precise contours of "normal" SHU confinement . . . it is sufficient to note that, ordinarily, SHU prisoners are kept in solitary confinement for twenty-three hours a day, provided one hour of exercise in the prison yard per day, and permitted two

showers per week.'" (citation omitted)); *see also* 7 N.Y.C.R.R. § 302.2 (a), (g) (providing that new SHU admissions are given a "State-issue" set of clothing, and "[a]ll other inmate property . . . [is] confiscated upon admission" and "securely stored . . . until the inmate is released or transferred from the SHU.").

While medical deprivation "may properly be considered as part of the liberty interest analysis under *Sandin*," *LaBounty v. Kinkhabwala*, 2 F. App'x 197, 201 (2d Cir. 2001) (summary order), there are no allegations that Plaintiff was denied medical care that he sought when he was in SHU. The Amended Complaint does not allege when Plaintiff was denied medical care, i.e. whether it occurred while he was in SHU or before, and there is no allegation that Plaintiff made any requests for medical treatment while in SHU. *Cf. Martinaj v. Uhler*, No. 18-cv-00257, 2019 WL 652251, at *10, 2019 U.S. Dist. LEXIS 24896, at *27–28 (N.D.N.Y. Feb. 15, 2019) (denying motion to dismiss due process claim where plaintiff alleged that he was assaulted by the defendant, causing leg, back, and head injuries, and during his month-long confinement, his "requests for medical treatment for the injuries that had been caused by [the defendant's] assault upon him were consistently denied"); *Zenon v. Downey*, No. 18-cv-0458, 2018 WL 6702851, at *4–5, 2018 U.S. Dist. LEXIS 215589, at *14 (N.D.N.Y. Dec. 20, 2018) (denying motion to dismiss where plaintiff alleged that he was "locked up for twenty-four hours per day without contact with his family or medical attention," after having suffered physical abuse during transfer, and that "no one told him whether or when he would be released from solitary" during 31-day confinement).

Accordingly, Defendant's motion to dismiss Plaintiff's procedural due process claim is granted.[8]

---

[8] In his reply brief Defendant notes that the Amended Complaint does not allege that there was any denial of due process relating to the hearing, and that falsified misbehavior reports alone are insufficient to establish a due process

## VI. LEAVE TO AMEND

Plaintiff has sought leave to amend. (Dkt. No. 76, at 24). While Plaintiff has not set forth any facts that would indicate a viable basis to amend, in light of Plaintiff's request, he may seek leave to amend. If Plaintiff seeks to file a Second Amended Complaint, Plaintiff must first file a letter brief, along with a proposed second amended complaint, within twenty-one (21) days of this Order; the letter brief must detail how the proposed pleading cures the deficiencies the Court has identified.

## VII. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant Christopher Winchell's motion to dismiss (Dkt. No. 69) is **GRANTED** as to Plaintiff's second cause of action for violation of his procedural due process rights, and that cause of action is **DISMISSED without prejudice**, and the motion to dismiss is otherwise **DENIED**, and it is further

**ORDERED** that if Plaintiff seeks to file an amended complaint, Plaintiff must first file a letter brief along with a proposed amended complaint within twenty-one (21) days of this Order, detailing how the proposed pleading cures the deficiencies the Court has identified. The Defendant may file a response within fourteen (14) days of Plaintiff's submission. The Court will hold a conference to discuss the proposed pleading, if necessary; and it is further

---

claim if the disciplinary hearing provided the inmate with due process. (Dkt. No. 77, at 13) (citing *Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005)). The Court cannot consider this argument which was first made in a reply brief. *See Browe v. CTC Corp.*, 15 F 4th 175, 191 (2d Cir. 2021) ("[A]rguments may not be made for the first time in a reply brief.").

15

**ORDERED** that the Clerk of the Court is directed to serve this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 8, 2022
Syracuse, New York

Brenda K. Sannes
U.S. District Judge